**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**CHAUNCEY D. CARVEY,**

                                        **Plaintiff,**

        **vs.**                                                    **06-CV-0737**
                                                                   **(NAM/DEP)**

**MICHAEL J. ASTRUE*,**
**COMMISSIONER OF SOCIAL SECURITY,**

                                        **Defendant.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

Olinsky & Shurtliff, LLP                   Jaya A. Shurtliff, Esq.
300 S. State Street, 5th Fl.
Syracuse, New York 13202
_Attorney for Plaintiff_

Andrew T. Baxter                           Tomasina DiGrigoli, Esq.
United States Attorney for
the Northern District of New York
P.O. Box 7198
100 South Clinton Street
Syracuse, New York 13261-7198
and
Office of General Counsel                  Barbara L. Spivak, Esq.
Social Security Administration
26 Federal Plaza
New York, New York 10278
_Attorneys for Defendant_

        ** On February 12, 2007, Michael J. Astrue was sworn in as Commissioner of the Social
        Security Administration.  Pursuant to Federal Rule of Civil Procedure 25(d)(1), he is
        automatically substituted for former Commissioner Joanne B. Barnhart as the defendant in
        this action.

**Norman A. Mordue, Chief U.S. District Judge:**

                        **MEMORANDUM-DECISION AND ORDER**

## I.     INTRODUCTION

Plaintiff Chauncey D. Carvey brings the above-captioned action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) of the Social Security Act, seeking review of the Commissioner of Social Security's decision to deny his application for disability insurance benefits ("DIB").  Presently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

## II.    BACKGROUND

Plaintiff filed an application for disability insurance benefits ("DIB") on February 2, 2004. (Administrative Transcript at p. 51).[1]  Plaintiff claims that he became disabled as a result of a stroke and a hole in his heart. (T. 16).  Plaintiff was born on January 13, 1958 and was 46 years old at the time of his application. (T. 16).   In 1975 and 1976, plaintiff attended auto body classes at a vocational school. (T. 69, 78, 142).  In January 1977, plaintiff completed high school. (T. 523).  From May 1985 until May 2003, plaintiff was employed by Niagara Mohawk, a utility company. (T. 94).  From 2000 until 2003, plaintiff was employed as a storeroom employee/stock handler with responsibilities that included loading and unloading trucks, putting stock away and driving trucks.  (T. 64, 525).

On April 21, 2004, plaintiff's application was denied and plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which was held on April 6, 2005. (T. 16).  On May 31, 2005, the ALJ issued a decision denying plaintiff's claim for disability benefits.  (T. 16-28).  The Appeals Council denied plaintiff's request for review on April 26, 2006, making the ALJ's decision the final determination of the Commissioner. (T. 7).  This action followed.

---

[1] Portions of the administrative transcript, Dkt. No. 3, will be cited herein as "(T__)."

## III.    DISCUSSION

The Social Security Act (the "Act") authorizes payment of disability insurance benefits to individuals with "disabilities." The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). There is a five-step analysis for evaluating disability claims:

> "In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do." The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)); *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000) (internal citations omitted).

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).                     In this case, the ALJ found at step one that plaintiff has not engaged in substantial gainful activity since the alleged date of disability onset. (T. 20). At step two, the ALJ concluded that plaintiff suffered from

cerebral vascular accident, patent foramen ovale, obesity, diabetes mellitus with neuropathy, sleep apnea, degenerative disc disease and carpal tunnel syndrome which qualified as a "severe impairments" within the meaning of the Social Security Regulations (the "Regulations"). (T. 20). At the third step of the analysis, the ALJ determined that plaintiff's impairments did not meet or equal the severity of any impairment listed in Appendix 1 of the Regulations. (T. 21). At the fourth step, the ALJ found that plaintiff had the following residual functional capacity ("RFC"):

> to lift and carry 10 pounds occasionally and 10 pounds frequently; sit for 6 hours during an 8-hour workday and stand and/or walk for 6 hours out of 8 during an 8-hour workday. Occasionally, he can use the right upper extremity to push and pull. The claimant can never climb ladders, ropes or scaffolds; however, he can occasionally perform tasks requiring the ability to climb ramps and stairs, balance, kneel, crouch, crawl and stoop. The claimant should avoid work that would subject him to vibrations or work around hazards. (T. 24).

Accordingly, the ALJ found that plaintiff could perform sedentary work but concluded that he was unable to perform all of his past relevant work. (T. 24). The ALJ obtained the testimony of a vocational expert to determine whether there were jobs plaintiff could perform. Based upon the vocational expert's testimony, the ALJ concluded at step five, that plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy such as work as a security monitor, order clerk, telephone solicitor and general office clerk. (T. 26). Therefore, the ALJ concluded that plaintiff was not under a disability as defined by the Social Security Act. (T. 26).

In seeking federal judicial review of the Commissioner's decision, plaintiff argues that: (1) the ALJ erred when he determined that plaintiff's mental impairments were not severe; (2) the ALJ failed to properly apply the treating physician rule to the opinions of Dr. Gabris and Dr. Ram; (3) the ALJ erred in evaluating plaintiff's credibility; (4) the RFC determination by the ALJ

4

is not supported by substantial evidence; (5) the ALJ failed to comply with SSR 00-4p; and (6) the ALJ improperly relied upon the testimony of the vocational expert and thus, the Commissioner did not sustain his burden of proof at the fifth step of the sequential evaluation process.

**A.     Severity of Mental Impairments**

Plaintiff argues that the ALJ erred when he determined that plaintiff's adjustment disorder with mixed anxiety and depression were non-severe. (Dkt. No. 6, pp. 14-15).   The Commissioner asserts that substantial evidence supports the ALJ's finding that plaintiff's mental condition was not a severe impairment. (Dkt. No. 8, p. 6).

An impairment is severe if it significantly limits physical or mental abilities to do basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b).  An ALJ must use a "special technique" to determine the severity of a claimant's mental impairment. *Rosado v. Barnhart*, 290 F.Supp.2d 431, 437 (S.D.N.Y. 2003) (citations omitted); 20 C.F.R. §§ 404.1520a(a); 416.920a(a).  First, the ALJ must evaluate the claimant's symptoms, as well as other signs and laboratory findings, and determine whether the claimant has a "medically determinable impairment."  20 C.F.R.  §§ 404.1520a(b)(1); 416.920a(b)(1).  If a medically determinable impairment exists, the ALJ must "rate the degree of functional limitation resulting from the impairment[ ]." 20 C.F.R.  §§ 404.1520a(b)(2), 416.920a(b)(2).  The ALJ must rate the degree of the claimant's functional limitation in four specific areas, referred to as "Paragraph B" criteria: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3); 416.920a(c)(3).  The ALJ

5

rates the first three areas on a five-point scale of "none," "mild," "moderate," "marked," and "extreme," and the fourth area on a four-point scale of "none," "one or two," "three," and "four or more." 20 C.F.R. §§ 404.1520a(c)(4); 416.920a(c)(4).  If the first three areas are rated as "none" or "mild," and the fourth as "none," the ALJ will conclude that the mental impairment is not severe "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities."  20 C.F.R. §§ 404.1520a(d)(1); 416.920a(d)(1).

In the case at hand, the ALJ employed the "special technique" and rated the degree of plaintiff's functional limitations.[2]   The ALJ noted that plaintiff "exhibited anxiety and depressive symptomatology since his stroke". (T. 22).  The ALJ cited to plaintiff's testimony and noted that plaintiff was able to socialize with friends, reported good sleep, no changes in appetite, exhibited no delusions and reported improved mood with medication. (T. 22).  The ALJ also explained that Dr. Kristen Barry, a consultative examiner, found plaintiff able to follow and understand simple directions and instructions, maintain attention and concentration and exhibited good judgment and insight. (T. 22).   The ALJ continued with an analysis of the "Paragraph B" criteria and determined that plaintiff's affective disorder and anxiety "are nonsevere impairments for the purposes of this decision". (T. 23).

A review of the administrative record reveals substantial evidence to support the ALJ's assessment.  In May 2003, plaintiff received prescriptions from Dr. Simmons, his primary care

---

[2] Plaintiff does not object to the ALJ's application of the "special technique" or to the specific degrees of functional limitation assigned by the ALJ.

physician, for Lexapro and Wellbutrin.[3]  (T. 169).  In subsequent examinations, Dr. Simmons

continually noted plaintiff's depression was "better" and "stable". (T. 165-166).  Dr. Simmons

suggested plaintiff seek treatment for depression, however, plaintiff did not follow this advice.

(T. 338).  Plaintiff's treating cardiologist, Dr. Michael Gabris, noted plaintiff had "no physical

limitations due to depression, emotional factors or anxiety". (T. 328).    Plaintiff did not seek

treatment for his alleged mental impairments until May 2004. (T. 325).  Plaintiff's social worker

was unable to provide a psychiatric assessment. (T. 322).  Plaintiff's psychiatrist, Dr. Stanley

Porebo, noted that "it is as yet unclear why at this time he seeks mental health services and

possible secondary gain showed be kept in mind". (T. 235, 292, 313).  The ALJ's decision is

further supported by the opinions of: (1)  Dr. Barry, who described plaintiff as fairly intelligent

and opined that plaintiff could follow and understand simple directions/instructions and maintain

attention/concentration; and (2)  Dr. Allan Hochberg, a physician who completed a Psychiatric

Review Technique at the request of the agency, who noted plaintiff's impairments were not

severe and that plaintiff suffered from only mild limitations. (T. 292).

 Plaintiff argues that the ALJ failed to acknowledge all of the medical evidence.

Specifically, plaintiff claims that the ALJ failed to consider Jeffrey Quinlan's opinion that

plaintiff had a GAF score of 50.[4]  (T. 321).  Mr. Quinlan is a CSW.  (T. 323).  Plaintiff asserts that

this score "represents serious impairment in social, occupational or school functioning".  (Dkt.

No. 6, p. 16).

---

[3]  Lexapro is an antidepressant. *Dorland's Illustrated Medical Dictionary*, 654, 1047 (31st ed. 2007).
Wellbutrin is used as an antidepressant and as an aid in smoking cessation to reduce the symptoms of nicotine
withdrawal. *Dorland's* at 265, 2107.

[4]  GAF is the Global Assessment of Functioning scale which is a rating of psychiatric status from 1 (lowest
level of functioning) to 100 (highest level), assessing psychological, social, and occupational functioning; widely
used in studies of treatment effectiveness.  *Dorland's* at 1697.

While the ALJ did not specifically comment on this finding in the decision, the failure to acknowledge and consider Mr. Quinlan's GAF observation was inconsequential.  In November 2004, Dr. Stanley Poreba treated plaintiff at the Oswego Hospital Behavioral Services Division. Dr. Poreba concluded plaintiff's "GAF = Current 60 - +70".[5] (T.  312).   The ALJ was not required to assign controlling weight to Mr. Quinlan's assessments as Dr. Poreba's report was more recent and further, Dr. Poreba is a specialist.  *See* 20 C.F.R. § 416.927(d)(5); *Matos ex rel. Mota v. Barnhart*,  2007 WL 943654, at *11 (S.D.N.Y. 2007) (holding that an ALJ will generally give "more weight to the opinion of a specialist about medical issues related to his or her area of specialty"); *see also Tavarez v. Barnhart*, 124 Fed.Appx. 48, 49 (2d Cir. 2005) (holding that recent reports are far more relevant to the determination of disability).

The ALJ considered plaintiff's history and found that his mental impairments did not impose any significant functional limitations.  The Court finds that the ALJ's determination is supported by substantial evidence.  As required, the ALJ then proceeded to assess plaintiff's RFC.

**B.    Treating Physician Rule**

Plaintiff argues that the ALJ erroneously afforded the opinions Dr. Michael Gabris, plaintiff's cardiologist, and Dr. Padma Ram "minimal weight".[6] (Dkt. No. 6, p. 16).  The Commissioner contends that the ALJ evaluated the opinions of Drs. Gabris and Ram in accordance with the regulations and gave appropriate reasons for concluding that the opinions did not compel a finding of disability.  (Dkt. No.8, p. 14).

---

[5] A GAF of 60 denotes moderate symptoms or moderate difficulty in social, occupational or school functioning.  A GAF of 70 denotes some mild symptoms.  *Diagnostic and Statistical Manual of Mental Disorders*, 34 (4th ed. 2000).

[6] Plaintiff does not object to the ALJ's assessment of the opinions of Drs. Simmons, Byrum or Poreba.

Under the regulations, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with substantial evidence in [the] case record."  20 C.F.R. § 404.1527(d)(2) (2001); *see also Rosa v. Callahan*, 168 F.3d 72, 78-79 (2d Cir. 1999); *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993); *see also Filoramo v. Apfel*, 1999 WL 1011942, at *7 (E.D.N.Y. 1999) (holding that the ALJ properly discounted the assessment of a treating physician as it was inconsistent with opinions of other treating and consulting physicians). When an ALJ refuses to assign a treating physician's opinion controlling weight, he must consider a number of factors to determine the appropriate weight to assign, including:

> (i) the frequency of the examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

20 C.F.R. 404.1527(d)(2).  Additionally, the regulations direct the Commissioner to "give good reasons in [his] notice of determination or decision for the weight [he] give[s] [claimant's] treating source's opinion".  *Id*.; *accord* 20 C.F.R. 416.927(d)(2).

The opinion of the treating physician is not afforded controlling weight where the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts. 20 C.F.R. § 404.1527(d)(2); *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); *see also Stevens v. Barnhart*, 473 F.Supp.2d 357, 362 (N.D.N.Y. 2007) (holding that the less consistent an opinion is with the record as a whole, the less weight it is to be given); *see also Otts v. Comm'r of Social Sec.*, 249 Fed.Appx. 887, 889 (2d Cir. 2007) (an ALJ may reject such an

9

opinion of a treating physician "upon the identification of good reasons, such as substantial contradictory evidence in the record").   Similarly, an opinion that is not based on clinical findings will not be accorded as much weight as an opinion that is well-supported.  20 C.F.R. § 404.1527(d)(3), 416.927 (d)(3); *see also Stevens*, 473 F.Supp.2d at 362.

### 1.      Dr. Gabris

Plaintiff argues that Dr. Gabris' opinions are based upon medically acceptable diagnostic techniques and are consistent with substantial medical evidence. (Dkt. No. 6, p. 16).   Defendant asserts that Dr. Gabris' opinions were inconsistent with his treatment notes, other evidence in the record and plaintiff's own testimony. (Dkt. No. 8, p. 16).

The ALJ considered Dr. Gabris' opinions and assigned  "minimal weight" to his assessments.  (T. 22).  Specifically, the ALJ stated that:

> While a medical source statement prepared by Dr. Michael Gabris in November 2004 implies that the claimant is essentially bedridden, these restrictions are not supported by his treatment notes and are not consistent with the overall evidence of record.  (T. 21).

Dr. Gabris completed a medical source statement in November 2004 and opined that plaintiff could occasionally lift less than 10 pounds, could stand/walk for less than 2 hours and sit for 4 hours.  (T. 329).   A review of the transcript reveals that Dr. Gabris' opinions are in conflict with the results of Dr. Gabris' prior examinations and testing.  Further, Dr. Gabris' opinions are contrary to his prior opinions regarding plaintiff's activities and restrictions.  Finally, Dr. Gabris' November 2004 opinions are contradicted by opinions expressed after the doctor's subsequent evaluations of plaintiff.

Dr. Gabris treated plaintiff six times from 2003 through 2005. (T. 169, 364).  At each visit, Dr. Gabris continually found plaintiff's physical examinations to be "normal".  Dr. Gabris

noted that a CT scan performed at his request in February 2005 was "normal". (T. 353).  An event recorder placed on plaintiff for one month to examine atrial activity including fibrillation revealed no evidence of atrial or ventricular arrhythmia. (T. 359).  In June 2003, Dr. Gabris opined that from a cardiac standpoint, plaintiff was clear for resuming work. (T. 163).   On January 26, 2004, Dr. Gabris opined that plaintiff should not lift more than 5 to 10 pounds and should not climb stairs or ladders or remain on his feet for a prolonged period of time.  (T. 268).  On February 10, 2005, Dr. Gabris examined plaintiff and opined "activity is unlimited with the exception to heavy lifting". (T. 348).  Clearly, the opinions expressed by Dr. Gabris in the medical source statement are in conflict with his prior examinations and testing and his  subsequent assessments.

Plaintiff further claims the ALJ erroneously concluded that Dr. Gabris' opinions were inconsistent with the opinions expressed by Dr. Hughes, a consulting neurologist. (Dkt. No. 6, p. 18).  Plaintiff claims that the ALJ only referenced a "small portion" of Dr. Hughes' opinion and a complete review of Dr. Hughes' report reveals that his opinions are consistent with Dr. Gabris' assessments.  *Id.*

The Court agrees that the ALJ improperly summarized and misquoted Dr. Hughes' opinions.   However, substantial evidence supports the ALJ's determination that Dr. Gabris' opinions are contradictory to the bulk of the medical evidence.  Dr. Simmons was plaintiff's primary care physician from February 2003 until November 2003 and treated plaintiff upon his admission to Oswego Hospital in August and November 2003.  (T. 200-226).  Dr. Simmons referred plaintiff to both cardiac specialists, Dr. Gabris and Dr. Craig Byrum.  In June 2003, Dr. Simmons opined that plaintiff could return to work with a 30 pound weight restriction. (T. 165).

The ALJ's decision is further supported by the opinions of  Dr. Kalayani Ganesh, a

neurologist who performed a consultative examination, and objective testing.  All CT scans of plaintiff's brain were normal; EKG studies revealed normal sinus rhythm, cardiac enzyme testing was normal and chest x-rays were normal.  (T. 163, 205, 213, 243, 495).

Plaintiff testified during the administrative hearing that he could carry 5 to 10 pounds. (T. 541).  He further testified that he could fix himself a sandwich, try to use the riding mower, walk around his yard, go out to eat once a week and attend car races once a week.  (T. 543-545).  Based upon plaintiff's own testimony, the ALJ properly declined to afford controlling weight to the Dr. Gabris' opinions.  *See Cruz v. Barnhart*, 2006 WL 1228581, at *13 (S.D.N.Y. 2006) (holding that a finding of incapacity was inconsistent with the plaintiff's own conduct); *see also Coyle v. Apfel*, 66 F.Supp.2d 368, 377-378 (N.D.N.Y. 1999) (holding that ALJ properly refused to afford controlling weight to treating physicians opinion that was inconsistent with the medical evidence and the evidence of plaintiff's daily activities).

Upon review of the record, the Court finds that the ALJ properly afforded Dr. Gabris' opinions "minimal weight" and pursuant to the regulations, adequately outlined the inconsistencies with other evidence in the record.

## 2.    Dr. Ram

Plaintiff alleges that the ALJ improperly assigned "minimal weight" to Dr. Ram's opinions.[7]  Specifically, plaintiff asserts that the ALJ failed to consider and discuss Dr. Ram's opinions in a medical source statement completed on March 4, 2004.  (Dkt. No. 6, p. 19).  Further, plaintiff asserts that Dr. Ram's opinions are consistent with the other substantial medical evidence. *Id*.

---

[7] The record contains no information regarding Dr. Ram's specialty.

The ALJ discussed a medical source statement completed by Dr. Ram on March 15, 2005:

Dr. Ram was sent a medical source statement by counsel, but failed to complete the entire form.  Dr. Ram refers repeatedly to the reports of claimant's cardiologist. Any opinions of Dr. Ram are given minimal weight as the form is incomplete and gives to [sic] specific basis or finding for such opinions. (T. 22).

Plaintiff argues that although the ALJ considered the March 2005 opinion, the ALJ failed to consider the March 2004 medical source statement completed by Dr. Ram.  Dr. Ram's March 2004 statement was prepared on a standardized multiple-choice form issued by the New York State Office of Temporary and Disability Assistance which the Second Circuit has previously criticized as "only marginally useful." *Klodzinski v. Astrue*, 2008 WL 1813222, at *1 (2d Cir. 2008) (quoting *Halloran*, 362 F.3d at 28, n. 2).  In the March 2004 assessment, Dr. Ram simply checked boxes indicating plaintiff's functional abilities. (T. 246).  Further, Dr. Ram provided few, if any, details regarding plaintiff's condition and indicated that the opinions were "per Dr. G. Simmons and Cardiologist". (T. 246).  Prior to completing the March 2004 report, Dr. Ram only examined the plaintiff once for the conditions relating to his disability.[8]  *See Quinones v. Barnhart,* 2006 WL 2136245, at *7 (S.D.N.Y. 2006) (holding that the treating physician's opinion was correctly afforded less weight as he only saw plaintiff on one occasion).

Therefore, the ALJ did not err by considering and weighing only Dr. Ram's more recent evaluation of March 2005.  Those opinions were rendered one year later and only one month before the administrative hearing in April 2005.  *See Tavarez v. Barnhart*, 124 Fed.Appx. 48, 49 (2d Cir. 2005) (holding that recent reports are far more relevant to the determination of disability); *see also Bromback v. Barnhart*, 2004 WL 1687223, at *7 (S.D.N.Y. 2004) (holding

_____

[8] Dr. Ram examined plaintiff in February and March 2004 for sinusitis and bronchitis and her reports make no reference to plaintiff's cardiac condition.

13

that the ALJ should not have relied on an evaluation that was one year prior to the hearing).

Further, the Court finds substantial evidence to support the ALJ's decision to assign minimal weight to Dr. Ram's March 2005 opinions. A physicians' statement is not a functional analysis if it does not offer any information regarding the crucial factors necessary to determine plaintiff's residual functional capacity. *See George v. Bowen*, 692 F.Supp. 215, 219 (S.D.N.Y. 1988) (concluding that treating physicians report was not a functional analysis as it contained no assessment of plaintiff's ability to lift and carry weight); s*ee also Hopper v. Comm'r of Social Sec.*, 2008 WL 724228, at *9 (N.D.N.Y. 2008) (holding that the treating physician made many findings, but he never provided any opinions regarding the plaintiff's ability to do work-related activities nor his level of disability, thus the ALJ did not err in failing to discuss what weight should be given to the treating physician's findings as none of those findings described the plaintiff's limitations).

In the March 2005 statement, Dr. Ram responded "per cardiologist" to questions regarding plaintiff's prognosis, severity of pain, clinical and objective findings, treatment and side effects of medications. (T. 386-387). Further, Dr. Ram did not provide any response to questions pertaining to plaintiff's specific functional limitations. (T. 386-392). A review of record reveals that none of Dr. Ram's treatment notes contain any specific functional capacity analysis or opinions regarding plaintiff's ability to do work-related activities. Furthermore, Dr. Ram's March 2005 opinions are contrary to the substantial medical evidence.[9]

The ALJ properly considered the regulations in refusing to give controlling weight to Dr. Ram's opinions regarding the plaintiff's functional limitations. The Court finds substantial

---

[9] This evidence was previously outlined in the context of Dr. Gabris's opinions.

evidence to support the ALJ's determination that Dr. Ram's opinions regarding plaintiff's functional limitations are inconsistent with the evidence in the record.

## C.      Credibility

Plaintiff argues that the ALJ applied an incorrect legal standard and erroneously determined that plaintiff's statements regarding his impairments were not fully credible. (Dkt. No. 6, p. 19).   Plaintiff alleges that the ALJ failed to comply with the requirements of Social Security Ruling ("SSR") 96-7p.  Further, plaintiff claims that the ALJ failed to consider his "good work record"as a factor in assessing his credibility. *Id*.  Defendant contends that the ALJ exercised his discretion and properly evaluated plaintiff's credibility. (Dkt. No. 8, p. 16).

It is well settled that "a claimant's subjective evidence of pain is entitled to great weight where . . . it is supported by objective medical evidence".  *Simmons v. U.S.R.R. Retirement Bd.*, 982 F.2d 49, 56 (2d Cir. 1992) (citations omitted).  "Objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption." *Casino-Ortiz v. Astrue*, 2007 WL 2745704, at *11, n. 21 (S.D.N.Y. 2007) (citing 20 C.F.R. § 404.1529(c)(2)) .  The ALJ retains discretion to assess the credibility of a claimant's testimony regarding disabling pain and "to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979); *Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999) (holding that an ALJ is in a better position to decide credibility).

If plaintiff's testimony concerning the intensity, persistence or functional limitations associated with his impairments is not fully supported by clinical evidence, the ALJ must

consider additional factors in order to assess that testimony, including: 1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi). The issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of his symptoms are consistent with the objective medical and other evidence. *See* SSR 96-7p, 1996 WL 374186, at *2 (SSA 1996). A claimant's subjective symptoms must be supported by medical signs or conditions that reasonably could be expected to produce the disability or alleged symptoms based on a consideration of all the evidence. *Pareja v. Barnhart*, 2004 WL 626176, at *10 (S.D.N.Y. 2004) (concluding that despite plaintiff's subjective complaints, the ALJ noted that several physicians determined that plaintiff could do medium work based on her medical records and on their own evaluations of her test results). One strong indication of credibility of an individual's statements is their consistency, both internally and with other information in the case record. SSR 96-7p, 1996 WL 274186, at *5 (SSA 1996).

After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony. *Martone v. Apfel*, 70 F. Supp.2d 145, 151 (N.D.N.Y. 1999); *see also* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). An ALJ rejecting subjective testimony must do so explicitly and with specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence. *Melchior v. Apfel*, 15 F.Supp.2d 215,

219 (N.D.N.Y. 1998) (quoting *Brandon v. Bowen*, 666 F.Supp 604, 608 (S.D.N.Y. 1987))

(citations omitted).

In this case, the ALJ provided a discussion of plaintiff's credibility and prior work

history.   The ALJ noted that "the claimant previously worked with his congenital heart defect

most of his life". (T. 23).  The ALJ stated:

> What is paramount to this case is that the claimant stopped working due to his stroke
> and not because of any of this other alleged impairments.  His alleged bad back,
> obesity, sleep apnea, diabetes, and carpal tunnel syndrome did not prevent him from
> engaging in heavy work activity.  (T. 23).

The ALJ continued his analysis and stated:

> Claimant has seized the opportunity to assert he is now unable to work at any
> exertional level.  Rather than return to a lighter duty as initially suggested by his
> physicians, the claimant has set his sights on obtaining disability.  At his hearing, he
> portrayed himself as almost bedridden, partially in fear that he might have another
> stroke.  A closer look at the evidence shows that the claimant is far more active than
> he alleges.  (T. 23).

The ALJ concluded:

> . . . [H]aving given due consideration to such matters as symptomatology, treatment
> and functional limitations in accordance with SSR 96-7p, I find that the claimant's
> subjective complaints and testimony regarding his limitations are not entirely
> credible. (T. 24).

Having reviewed the Administrative Transcript in its entirety, the Court finds that the

ALJ applied the correct legal standard in assessing plaintiff's credibility.  The ALJ thoroughly

discussed plaintiff's daily activities and noted plaintiff could drive without restrictions, care for

himself, provide childcare for his children, play computer card games, attend car races and car

shows, perform basic household chores, attend cookouts and school functions, take the family car

to a mechanic for maintenance and occasionally shop and cook.  (T. 23-24).

The ALJ also found plaintiff was "stable on prescribed medications" with "no indications

17

of adverse medication side-effects". (T. 24).   The ALJ noted plaintiff responded well to

"conservative treatment measures" .  (T. 22, 23).  The ALJ also discussed other measures taken to

relieve his symptoms such as plaintiff's use of a "C-pap breathing machine" which "continued to

work without complications" and plaintiff's success with physical therapy. (T. 21, 24).  The ALJ

noted that the record lacked any evidence of progressive weakness or increased neurological

deficits with only conservative treatment for these complaints. (T. 24).  Consequently, the Court

finds that the ALJ properly assessed the factors enumerated in 20 C.F.R. § 404.1529(c)(3)(i)-(vi)

and § 416.929(c)(3)(i)-(vi).

Plaintiff argues that his past work history entitles him to "substantial credibility". (Dkt.

No. 6, p. 20).  SSA regulations provide that the fact-finder "will consider all of the evidence

presented, including information about your prior work record." 20 C.F.R. § 416.929(c)(3).

While "[a] claimant with a good work record is entitled to substantial credibility when claiming

an inability to work ... [w]ork history [ ] is but one of many factors to be utilized by the ALJ in

determining credibility." *Marine v. Barnhart*, 2003 WL 22434094, at *4 (S.D.N.Y. 2003); *see

also Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998).  Although a plaintiff with a long work

history is entitled to "substantial credibility", the Commissioner may discount a plaintiff's

testimony to the extent that it is inconsistent with medical evidence, the lack of medical treatment,

and her own activities during the relevant period.  *Howe-Andrews v. Astrue*, 2007 WL 1839891,

at *10 (E.D.N.Y. 2007).

In this case, taken as a whole, the record supports the ALJ's determination that plaintiff's

claims were not fully credible.  The Court finds that the ALJ employed the proper legal standards

in assessing the credibility of plaintiff's complaints of consistent and disabling pain.  The ALJ

adequately specified the reasons for discrediting plaintiff's statements.  Accordingly, the ALJ's

analysis of the record and decision as to plaintiff's credibility was based on substantial evidence.

**D.      Residual Functional Capacity**

Residual functional capacity is:

> "what an individual can still do despite his or her limitations . . . .  Ordinarily, RFC
> is the individual's maximum remaining ability to do sustained work activities in an
> ordinary work setting on a regular and continuing basis, and the RFC assessment must
> include a discussion of the individual's abilities on that basis. A 'regular and
> continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work
> schedule."

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, Policy Interpretation Ruling

Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims ("SSR 96-8p"), 1996

WL 374184, at *2 (S.S.A. July 2, 1996)).  In making a residual functional capacity determination,

the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including

pain and other limitations which could interfere with work activities on a regular and continuing

basis.  20 C.F.R. § 404.1545(a).

Plaintiff argues that the ALJ's RFC assessment should have included the following

limitations: performing simple tasks; taking frequent rest periods; and no bending. (Dkt. No. 6, p.

23).  Further, plaintiff asserts that the ALJ should have elicited an opinion from plaintiff's treating

psychiatrist as to the limitations resulting from plaintiff's mental impairments.[10] *Id*.  The

Commissioner contends that substantial evidence supports the ALJ's finding that the residual

effects of plaintiff's stroke did not prevent him from working. (Dkt. No. 8, p. 9).

In this case, the ALJ found plaintiff had the RFC:

---

[10] Plaintiff objects only to the ALJ's failure to include further restrictions in the assessment.  Plaintiff's brief does not provide any additional arguments with respect to the ALJ's RFC determination.

to lift and carry 10 pounds occasionally and 10 pounds frequently; sit for 6 hours during an 8-hour workday and stand and/or walk for 6 hours out of 8 during an 8-hour workday.  Occasionally, he can use the right upper extremity to push and pull. The claimant can never climb ladders, ropes or scaffolds; however, he can occasionally perform tasks requiring the ability to climb ramps and stairs, balance, kneel, crouch, crawl and stoop.  The claimant should avoid work that would subject him to vibrations or work around hazards.  (T. 24).

Plaintiff argues that the ALJ should have considered and incorporated Dr. Barry's opinion that plaintiff is limited to "simple tasks". (Dkt. No. 6, p. 23).  Upon a review of the transcript, the Court concludes that plaintiff misstates Dr. Barry's opinion.   Nowhere in her evaluation did Dr. Barry opine that plaintiff was limited to "simple tasks".  Dr. Barry opined that plaintiff was able to ". . . follow and understand simple directions and instructions.  He is able to maintain his attention and concentration.  He appears to be a fairly intelligent individual". (T. 238).  Further, the ALJ cited and relied upon Dr. Barry's evaluation in the decision. (T. 22).

Plaintiff also claims that the ALJ should have incorporated Dr. Ram's opinion that plaintiff required frequent rest periods and "should do no bending" into the RFC assessment. (Dkt. No. 6, p. 23).  This opinion was expressed by Dr. Ram in the March 4, 2004 medical source statement.  As previously discussed, the ALJ correctly disregarded the opinions in that assessment.  Therefore, the ALJ was not compelled to include these limitations.

Finally, plaintiff alleges that the ALJ failed to fulfill his duty to develop the record when he failed to contact Dr. Porebo regarding plaintiff's limitations due to his mental impairments. (Dkt. No. 6, p. 23).  The ALJ does not need to attempt to obtain every extant record of the claimant's doctor visits when the information on the record is otherwise sufficient to make a determination, and need not request more detailed information from the treating physician if the physician's report is a sufficient basis on which to conclude that the claimant is not disabled.

*Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).  In *Rebull v. Massanari*, 240 F.Supp.2d 265, 273 (S.D.N.Y. 2002), the court explained:

> This aspect of the fact-finding function, a credibility determination, in essence, would be rendered nugatory if, whenever a treating physician's stated opinion is found to be unsupported by the record, the ALJ were required to summon that physician to conform his opinion to the evidence. Such a standard, in turn, would invite additional critique by the Commissioner in opposition and conceivably demand another recall of the treating physician, ad infinitum. Reasonable discretion in the assessment of the adequacy and completeness of the administrative record circumscribes this potential vicious cycle.

In this case, the Court finds that the record does not support plaintiff's contention that the ALJ failed to obtain relevant medical information from Dr. Poreba.  Dr. Poreba treated plaintiff once, diagnosed plaintiff with adjustment disorder and concluded that "secondary gain" may have been the reason for plaintiff seeking mental health treatment. (T. 313).   As discussed previously, substantial evidence exists to support the ALJ's determination that plaintiff's mental impairments were not severe.  Dr. Poreba's assessment of plaintiff's condition is not contradicted by any other treating or consulting physician.  *See Peterson v. Barnhart*, 219 F.Supp.2d 491, 494 (S.D.N.Y. 2002) (holding that no inconsistencies exist as plaintiff's medical reports are complete and uncontradicted by similar reports during the disputed period).   Moreover, the ALJ did not reject Dr. Poreba's opinion and there is no evidence to suggest that Dr. Poreba did not adequately describe plaintiff's condition.  Thus, the ALJ had no obligation to obtain more detailed records from Dr. Porebo and no obligation to attempt to supplement the existing record.  *See Infante v. Apfel*, 2001 WL 536930, at *6 (S.D.N.Y. 2001) (holding that because the evidence from the treating physician was adequate and because it stated that plaintiff was not disabled, the ALJ had no further obligation to obtain a more detailed report).

21

Accordingly, the Court finds that substantial evidence exists to support the ALJ's RFC determination and conclusion that plaintiff can perform sedentary work.

**E.    Vocational Expert**

At the fifth step of the sequential evaluation of disability, the Commissioner bears the responsibility of proving that plaintiff is capable of performing other jobs existing in significant numbers in the national economy in light of plaintiff's residual functional capacity, age, education, and past relevant work.  20 C.F.R. §§ 416.920, 416.960.  Ordinarily, the Commissioner meets his burden at this step "by resorting to the applicable medical vocational guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2 (1986)."  *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986).  Use of the grids as the exclusive framework for making a disability determination may be precluded where, as here, plaintiff's physical limitations are combined with non-exertional impairments which further limit the range of work he can perform.  *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).  In these circumstances, the Commissioner must "introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform."  *Bapp*, 802 F.2d at 603.  In making such a determination, the expert can rely on information available in governmental and other publications, such as the Dictionary of Occupational Titles ("DOT").  See 20 C.F.R. §§ 404.1566(d), 416.966(d); *Sanchez v. Barnhart*, 329 F.Supp.2d 445, 449 (S.D.N.Y. 2004).

In this case, the ALJ concluded that plaintiff had the residual functional capacity to perform sedentary work. (T. 24).  The ALJ enlisted the services of a vocational expert to determine whether there were any jobs existing in substantial numbers that a person with

plaintiff's vocational and educational background, and with the following limitations could

perform:

> lift and/or carry including upward pulling up to 10 pounds, frequently lift and/or carry
> including upward pulling up to 10 pounds.  Can stand and/or walk with normal breaks for
> about six hours out of in an eight-hour workday.  Pushing and pulling is limited in the right
> upper extremity to occasionally.  This individual can occasionally climb ramps, stairs.
> Should never climb ladders, ropes, scaffolds.  Can occasionally balance, kneel, crouch, crawl,
> stoop and bend.  Should avoid concentrated exposure to vibrations and hazards such as
> dangerous moving machinery and unprotected heights.  (T. 561).

The vocational expert responded that a person with this set of assumptions could perform several

jobs, including security monitor, order clerk, telephone solicitor and general office clerk. (T. 562).

### 1.    SSR 00-4p

Plaintiff argues that the ALJ failed to comply with SSR 00-4p as he failed to ask the

vocational expert whether or not the expert's testimony was consistent with the Dictionary of

Occupational Titles ("DOT"). (Dkt No. 6, p. 24).   Pursuant to Social Security Ruling 00-4p, an

ALJ must "[i]dentify and obtain a reasonable explanation for any conflicts between occupational

evidence provided by VEs [vocational experts] or VSs [vocational specialists] and information in

the DOT." *Mendez v. Barnhart*, 2007 WL 186800, at *13 (S.D.N.Y. 2007); *see also Berman v.

Comm'r of Social Security*, 2007 WL 2178073, at *1 (E.D.N.Y. 2007).  When such conflicts

arise, the ALJ must "[e]xplain in the determination or decision how any conflict that has been

identified was resolved."   SSR 00-4p, 2000 WL 1898703, at *2 (S.S.A. 2000).  An ALJ's failure

to follow SSR 00-4p is harmless where there is no conflict between the expert's opinion and the

DOT.  *See Massachi v. Astrue*, 486 F.3d 1149, 1154, n. 9 (9th Cir. 2007).

In this case, the ALJ stated that "[c]onsistent with SSR 00-4p, the vocational expert

testified that the jobs names are not in conflict with information in the Dictionary of Occupational

Titles". (T. 26).  Plaintiff argues that the ALJ did not specifically ask the vocational expert if the jobs identified were in conflict with the DOT, rather, the ALJ simply asked the expert, at the beginning of his testimony, if he was familiar with the DOT. (Dkt No. 6, p. 24).  Plaintiff does not cite to any specific portion of the expert's testimony that is allegedly in conflict with the DOT.

After a review of the Administrative Transcript, the Court finds plaintiff's argument to be without merit. The ALJ specifically advised the expert:

> to the extent you're asked today to identify or classify any job by either myself or Counsel you need to let us know if you would if your opinion differs from the way you classify or identify that job with the way it's portrayed in the Dictionary of Occupational Titles.  (T. 554).

The ALJ then posed four hypotheticals to the vocational expert and continually asked the expert whether or not plaintiff could perform jobs as "set forth in the DOT". (T. 559 - 562).  In response, the expert cited to the DOT numbers and specific vocational numbers (SVP) for jobs that the hypothetical individual could perform.  (T. 559-562).  No conflict was identified and moreover, plaintiff's counsel did not identify or cross examine the vocational expert on any potential inconsistency. *See Rooks v. Astrue*, 2008 WL 1901397, at *4 (W.D.Ky. 2008).  The Court finds that no conflict existed between the experts testimony and the DOT, therefore the ALJ's alleged failure to specifically follow SSR 00-4p was harmless.

**2.     Expert not qualified to testify**

Plaintiff also argues that the vocational expert was not qualified to testify.  (Dkt. No. 6, p. 24).  Plaintiff claims that the expert's resume does not describe any experience with local labor markets.  *Id*.  Plaintiff also asserts that the expert did not offer any testimony relevant to the number of jobs existing in the Central New York region and further, that the expert relied upon the Internet rather than his own expertise.  *Id*.  The Commissioner contends that the expert's

24

testimony as to the existence of work that plaintiff could perform constitutes substantial evidence in support of the ALJ's decision.  (Dkt. No. 8, p. 21).

The failure to present an argument to the ALJ constitutes waiver of the right to raise it on appeal. *Union Tank Car Co., Inc. v. Occupational Safety and Health Admin.,* 192 F.3d 701, 707 (7th Cir. 1999) (citing *U.S. Secretary of Labor v. Cerro Copper Products Co.,* 795 F.2d 25, 26 n. 2 (7th Cir. 1986)). Raising a discrepancy only after a hearing, is too late. *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002); *see also Jordan v. Apfel*, 192 F.Supp.2d 8, 13 (W.D.N.Y. 2001) (the plaintiff's counsel did not voice any objection during the hearing with respect to the conduct now claimed as improper or erroneous).

In this case, prior to questioning the vocational expert, the ALJ specifically asked plaintiff's counsel if she had any objections to the expert's credentials.  Plaintiff's counsel responded "[n]o objections". (T. 551).   Plaintiff's counsel did not challenge the expert's credentials at any time during the hearing.  Accordingly, that portion of plaintiff's objection is forfeited.

Plaintiff further contends that the expert's testimony was unreliable as the expert testified that he did not have numbers for jobs in the "Central New York region". (Dkt. No. 6, p. 25). Plaintiff has misinterpreted the legal standard.  *Colon v. Comm'r of Social Sec*., 2004 WL 1144059, at *7 -8  (N.D.N.Y. 2004) (holding that the proposition that jobs do not exist in the regional economy has no legal merit).  The Social Security Act provides:

> A claimant's physical or mental impairment or impairments [must be] of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h [er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for h[er], or whether [s]he would be hired if [s]he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  The Commissioner's regulations further provide: ". . . if work that you can do does exist in the national economy, we will determine that you are not disabled."  20 C.F.R. §§ 404.1566(b) and 416.966(b).

During the hearing, the expert provided the number of jobs "nationally" and "in the State of New York" for security monitors, order clerks, telephone solicitors and general office clerks.[11] (T. 562).  Accordingly, the Court finds that the expert presented a "significant number" of potential jobs for plaintiff.

Finally, plaintiff argues that the expert relied upon the Internet rather than his own expertise. (Dkt. No. 6, p. 24).  Plaintiff has not cited to any applicable regulation or case to support this argument.  When an expert identifies the sources he consulted to determine figures, the expert is not required to provide supporting documentation.  *See Galiotti v. Astrue*, 2008 WL 501320, at *2 (2d Cir. 2008).  In this case, the expert specifically stated that his figures were from the U.S. Department of Labor, Bureau of Labor Statistics and the Occupational Outlook Handbook. (T. 566).  The expert stated that the New York numbers were also from the Department of Labor. (T. 566).  The expert further stated that these sources are typically relied upon by experts providing testimony in similar situations. (T. 566).  The regulations make specific provision for reliance on the Dictionary of Occupational Titles, Bureau of Labor statistics numbers, and the testimony of vocational experts.  *Pitcher v. Astrue*, 2008 WL 619175, at *7 (N.D.N.Y. 2008) (citing 20 C.F.R. §§ 404.1566, 404.1569, 404.1569a; 20 C.F.R. Part 404 Subpart P, App. 2 § 200.00(a)(e)(2)); *see also Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir.1986).

---

[11] Plaintiff does not present any argument with regard to the number of jobs that exist in the national economy.

Accordingly, the Court concludes that the ALJ applied the appropriate legal standards and properly relied upon the testimony of the vocational expert.

**IV.     CONCLUSION**

Based upon the foregoing, it is hereby

**ORDERED** that the decision denying disability benefits be **AFFIRMED**; and it is further

**ORDERED** that defendant's motion for judgment on the pleadings is **GRANTED**; and it is further

**ORDERED** that plaintiff's complaint is **DISMISSED**; and it is further

**ORDERED** that pursuant to General Order # 32, the parties are advised that the referral to a Magistrate Judge as provided for under Local Rule 72.3 has been rescinded, as such, any appeal taken from this Order will be to the Court of Appeals for the Second Circuit; and it is further

**ORDERED** that the Clerk of Court enter judgment in this case.

**IT IS SO ORDERED.**

Dated: September 30, 2009
            Syracuse, New York

Norman A. Mordue
Chief United States District Court Judge